The Chancellor.
The mode suggested by the counsel for the appellants for ascertaining the product of the sale of the *243 franchises, cannot he adopted. The tract of seventeen acres, south of the Assunpink, was valued by the receivers at $10,000, and all the rest of the real estate of the company at only $ 1100. it is evident the receivers valued the land occupied by the canal, race-ways, and their banks, as mere land. The canal and race-ways cost the company some $75,000.
Is there any other mode of ascertaining the product of the sale of the chartered rights, as distinct from the proceeds of the sale of the real estate? Certainly none. The product of the receivers’ sale, therefore, is an entire fund, of one character. They are not equitable assets, distributable pro raía among creditors of all classes. The counsel on both sides admit they are to go to the mortgage and judgment creditors according to law. The difficulty is as to the legal priorities.
Several of the mortgages cover the whole property of the company, and several cover only separate parts of it. It is clear, that so long as the sale stands, and the decree confirming it, it being a sale of the whole property together for an entire sum, it is impossible to adopt any other order of priority than the dates of the respective incumbrances. The receivers might, possibly, have sold in such parcels as would have enabled them to give to each incumbrancer 'his share “ according to law,” in reference to the liens on the different parts and on the whole and the dates of the liens. But the race-way and the franchises appurtenant thereto could not be sold separately with any propriety, nor the canal and rac-e-ways sold in parts. The legislature, therefore, in directing that the several creditors should receive their respective shares of the proceeds <! according to law,” could not have understood these words to have the meaning before referred to. As the sale was made, and contemplated by the legislature to be made, there was no law remaining according to which the proceeds of the sale could be distributed, but tlie law of priority in date of incumbrance. All other law is absolutely precluded and excluded.
On this part of the case, therefore, the decree confirming the sale is the law of the case; and no rule of distribution exists except the one adopted by the receivers.
The next subject of inquiry is No. 4 in the report of the receivers. The lessors, the .company, assign the rents to accrue *244 on certain leases, as security for the payment of their notes. •Does this constitute a lien on the fund in court for the amount of the notes, in preference to subsequent mortgage and judgment creditors ? I cannot see that it does. ■
No. 5 in the report of the receivers is a claim of the same kind.
Next, 'the rents received by the receivers go to the judgment creditors. The Trenton Bank has the first judgment, which is a lien on the. whole fund in .court, as well the proceeds of the receivers’ sale as these rents.
Next in priority of date is a mortgage, whose lien is only oil the proceeds of the receivers’ sale, and not on these rents.
Next in priority of date is a judgment creditor, whose lien is also on the whole fund in court, including the rents. The fund in court exclusive of the rents, is sufficient to pay the bank judgment and part of the mortgage. Is it the duty of the court to apply the rents to the payment of so much of the bank judgment, in aid of the mortgage, and in prejudice of the subsequent judgment creditor?
It is so claimed on the part of the mortgagee. I think not. The equity of the mortgagee is not more than equal to that of the subsequent judgment creditor; and between equal equities the court does not interfere.
The next inquiry relates to the Hargous mortgage, now held by McCall, on seventeen acres of land south of the Assunpink, through which the race-way runs. This mortgage was on the property when the company bought it. It is contended by the counsel for the appellants, that the purchaser at the receivers’ sale bought subject to this mortgage, and that it should not be paid out of the proceeds of that sale. It seems to me, that the legislature, by the act of February, 1844, intended that the purchaser at the receivers’ sale should take the property of the company free from all incumbrances whatever. That McCall might compel the payment of the bond by Hargous, the obligor and mortgagor, notwithstanding the act and the sale under it, would make no difference in this court. In that case Hargous would be let in upon the fund for the amount paid by him. There may be something extraordinary in the nature and provisions of the act of February, 1844; but our present inquiry *245 relates simply to the distribution of the fund; and we have nothing to do but to carry out what seems to be the intention of the act.
The exception to certificates for interest upon interest, to holders of claims under some of the mortgages, is allowed.